1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL LOREN SKOOR,<br><br>                          Petitioner,<br><br>            vs.<br><br>JAMES E. TILTON, Secretary,<br><br>                          Respondent. | Civil No.    06cv1601-IEG (LSP)<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE:**<br><br>**(1) DENYING MOTION TO STRIKE;**<br><br>**(2) DENYING MOTION TO DISMISS;**<br><br>**(3) DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

        This Report and Recommendation is submitted to Chief United States District Judge Irma E. Gonzalez, pursuant to 28 U.S.C. § 636(b) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California.

## I.

## FEDERAL PROCEEDINGS

        On August 10, 2006, Michael Loren Skoor, (hereinafter "Petitioner"), a California state prisoner proceeding by and through counsel, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  (Doc. No. 1.)  Petitioner challenges his sentence of twenty-nine years in state prison imposed as a result of a 2002 conviction, following a guilty plea, of twenty counts of lewd acts on a child and four counts of attempted lewd acts on a child.  Petitioner claims he received ineffective assistance of counsel in the plea process and at sentencing.

Respondent James E. Tilton, the Secretary of the California Department of Corrections and Rehabilitation, proceeding by and through the Attorney General of the State of California, (hereinafter "Respondent"), was initially ordered to respond to the Petition on or before October 24, 2006.  (Doc. No. 3.)  The Court granted four requests filed by Respondent for extensions of time to respond, the last of which set a deadline for an Answer to be filed on or before March 12, 2007.  (Doc. No. 12.)  Rather than file an Answer, Respondent filed a Motion to Dismiss on March 12, 2007, contending the Petition was filed one day after the expiration of the one-year statute of limitations.  (Doc. No. 13.)  Petitioner filed an Opposition to the Motion to Dismiss, arguing that the Petition is timely.  (Doc. No. 14.)  Petitioner also filed a Motion to Strike the Motion to Dismiss as untimely, contending that the Court granted the fourth extension of time to file an Answer only, not a Motion to Dismiss, thereby implicitly denying Respondent's request for an extension of time to file a Motion to Dismiss.  (Doc. No. 15.)

On April 9, 2007, the Court ordered Respondent to file an Answer on the merits of the claims presented in the Petition.  (Doc. No 16.)  Respondent filed an Answer on April 19, 2007, contending that the Petition was filed one day after expiration of the statute of limitations, and that Petitioner is not entitled to habeas relief on the merits of the claims.  (Doc. No. 17.)  Following an extension of time, Petitioner filed a Traverse.  (Doc. No. 20.)

For the following reasons, the Court finds that Respondent did not waive the affirmative defense of timeliness due to a delay in filing the Motion to Dismiss, and recommends that Petitioner's Motion to Strike be **DENIED**.  The Court also finds that the Petition was filed within the one-year statute of limitations, and recommends that Respondent's Motion to Dismiss be **DENIED**.  Finally, the Court finds that Petitioner is not entitled to habeas relief on the merits of the claims presented in the Petition, and recommends the Petition be **DENIED**.

## II.

## STATE PROCEEDINGS

Petitioner was charged in a 42-count Amended Information filed on August 12, 2002, in the San Diego County Superior Court, with thirty felony counts of lewd acts upon a child in violation of California Penal Code section 288(a), five felony counts of sending harmful matter

with the intent to seduce a minor in violation of California Penal Code section 288.2(a), five felony counts of residential burglary in violation of California Penal Code section 459, and two misdemeanor counts of indecent exposure. (Lodgment No. 13, Clerk's Tr. at 63-81.) Petitioner entered a guilty plea on August 12, 2002, to twenty counts of lewd acts on a child in violation of California Penal Code section 288(a), and four counts of attempted lewd acts on a child in violation of California Penal Code sections 664 and 228(a). (Id. at 82.) The plea agreement stipulated that the sentence would be not less than twenty years in state prison and not more than thirty years. (Id.) On October 1, 2002, Petitioner was sentenced to twenty-nine years in state prison. (Id. at 352.)

Petitioner appealed his sentence, claiming the trial judge abused his discretion in choosing a sentence at the upper end of the stipulated sentencing range. (Lodgment No. 1.) The judgment was affirmed in all respects. (Lodgment No. 4.) Petitioner filed a petition for review in the state supreme court presenting the same claim. (Lodgment No. 5.) That petition was denied without a statement of reasoning. (Lodgment No. 6, People v. Skoor, No. S123396 (Cal. Apr. 21, 2004).) Petitioner did not file a petition for writ of certiorari in the United States Supreme Court. As detailed below, his conviction became final for purposes of the one-year statute of limitations on July 20, 2004, the last day he could have filed a petition for certiorari.

Petitioner waited nearly one year before next challenging his sentence, filing a habeas petition in the state superior court on July 13, 2005. (Lodgment No. 9.) He sought habeas relief in that court presenting, inter alia, the same claims upon which he seeks relief in his federal Petition. (Id. at 14-20.) That petition was denied on the merits in a written order filed on September 7, 2005. (Lodgment No. 10.) Petitioner filed a habeas petition in the appellate court over six months later, on or about March 17, 2006, raising the same claims presented here. (Lodgment No. 7 at 17-27.) That petition was denied on the merits in a written opinion filed on June 14, 2006. (Lodgment No. 8.) Petitioner filed a petition for review in the state supreme court on June 26, 2006. (Lodgment No. 11.) That petition was denied on August 2, 2006, by an order which stated in full: "Petition for review DENIED. George, C.J., was absent and did not participate." (Lodgment No. 12, In re Skoor, No. S144680 (Cal. Aug. 2, 2006).)

06cv1601

# III.

## DISCUSSION

Respondent moves to dismiss the Petition on the basis that it was filed after expiration of the one-year statute of limitations set forth in 28 U.S.C. § 2244(d). Respondent also contends that the claims presented in the Petition are without merit. Petitioner contends that his Petition is timely, that the Court should strike the Motion to Dismiss as untimely, and that he is entitled to habeas relief on the merits of his claims.

### A.    Motion to Strike

Petitioner moves to strike Respondent's Motion to Dismiss, contending that it was filed late, and, therefore, presumably, the affirmative defense of timeliness contained therein has been waived. (Memorandum of Points and Authorities in Support of Motion to Strike [Doc. No. 15] at 3.) Respondent has not opposed the Motion to Strike.

There is no basis for striking the Motion to Dismiss. The Court did not specifically preclude Respondent from filing a Motion to Dismiss. Even were the Court to find that the Motion to Dismiss was untimely, Respondent has presented the statute of limitations argument in the Answer. (Answer at 2; Memorandum of Points and Authorities in Support of Answer ["Ans. Mem."] at 6-12.) The Court is therefore precluded from finding that Respondent has waived the affirmative defense of timeliness by failing to raise it in a timely motion to dismiss. Day v. McDonough, 547 U.S. 198, ___, 126 S.Ct. 1675, 1683-84 (2006). Furthermore, as set forth below, the Court finds that the Petition is timely and recommends that the Motion to Dismiss be denied. Because there is no basis for striking the Motion to Dismiss, the Court recommends that Petitioner's Motion to Strike be **DENIED**.

### B.    Motion to Dismiss

Respondent moves to dismiss the Petition on the basis that it was filed after the expiration of the one-year statute of limitations set forth in 28 U.S.C. § 2244(d). Respondent contends that Petitioner's conviction became final on July 20, 2004, and that absent tolling, the Petition here, which was filed on August 10, 2006, was filed over one year late. (Ans. Mem. at 7-8.) Respondent argues that Petitioner is not entitled to statutory tolling for the entire period he was

1   pursuing state post-conviction relief, because the six-month gap between the denial of habeas

2   relief by the superior court and the filing of a new habeas petition in the appellate court

3   amounted to an "unreasonable delay."  (Id. at 8-10.)  Respondent also contends that even

4   assuming the statute of limitations was tolled the entire time Petitioner was pursuing state post-

5   conviction relief, Petitioner had seven days left on the limitations period when tolling stopped,

6   and the Petition here was filed eight days later, one day late.  (Id. at 11-12.)

7        Petitioner contends he is entitled to statutory tolling for the entire period he was pursing

8   state post-conviction relief because the six-month delay was reasonable and necessary.  (Pet.

9   Mem. at 6-7; Memorandum of Points and Authorities in Support of Traverse ["Trav. Mem."]

10   (Doc. No. 6.) at 5-7.)  Petitioner agrees with Respondent that, assuming the limitations period

11   was tolled throughout the entire round of state habeas proceedings, it began to run again on

12   August 3, 2006, at which time he had seven days left to timely file his federal habeas petition.

13   (Pet. Mem. at 7; Trav. Mem. at 6.)  However, the parties disagree whether seven or eight days

14   elapsed between August 3, 2006 and August 10, 2006.

15        28 U.S.C. § 2244(d) describes when the statute of limitations begins to run:

16            (d)(1)  A 1-year period of limitation shall apply to an application for
             a writ of habeas corpus by a person in custody pursuant to the
17            judgment of a State court.  The limitation period shall run from the
             latest of -
18
                  (A) the date on which the judgment became final by
19                the conclusion of direct review or the expiration of the time
                 for seeking such review;
20
                  (B) the date on which the impediment to filing an
21                application created by State action in violation of the
                 Constitution or laws of the United States is removed, if the
22                applicant was prevented from filing by such State action;

23                (C) the date on which the constitutional right asserted
                 was initially recognized by the Supreme Court, if the right
24                has been newly recognized by the Supreme Court and made
                 retroactively applicable to cases on collateral review; or
25
                  (D) the date on which the factual predicate of the
26                claim or claims presented could have been discovered
                 through the exercise of due diligence.
27

28   28 U.S.C.A. § 2244(d)(1)(A)-(D) (West 2006).

1    The parties agree that Petitioner's conviction and sentence became final within the

2    meaning of 28 U.S.C. § 2244(d)(1) on July 20, 2004, the last day Petitioner could have filed a

3    petition for a writ of certiorari in the Supreme Court.  Bowen v. Roe, 188 F.3d 1157, 1159 (9th

4    Cir. 1999).  The parties also agree the one-year statute of limitations began to run the next day,

5    on July 21, 2004.  Patterson v. Stewart, 251 F.3d 1243, 1246 (9th Cir. 2001).  The limitations

6    period was therefore set to expire on July 21, 2005.  Absent tolling of the statute of limitations,

7    the Petition here, which was filed on August 10, 2006, was over one year late.

8    The statute of limitations is tolled while a "properly filed" state habeas corpus petition

9    is "pending" in the state court.  28 U.S.C. § 2244(d)(2).  Under the holding of Nino v. Galaza,

10   183 F.3d 1003, 1006 (9th Cir. 1999), the "statute of limitations is tolled from the time the first

11   state habeas petition is filed until the California Supreme Court rejects the petitioner's final

12   collateral challenge," provided the petitions were properly filed and pending that entire time.

13   The meaning of the terms "properly filed" and "pending" in Nino have since been clarified by

14   the United States Supreme Court in the Carey, Pace and Chavis decisions.  In Carey v. Saffold,

15   536 U.S. 214 (2002), the Court held that the time between the denial of a petition in a lower

16   California court and the filing of a subsequent petition in the next higher state court does not toll

17   the statute of limitations (i.e., an application for post-conviction relief is not "pending" during

18   the interstitial periods while one is pursuing a full round of state collateral review), if the petition

19   is ultimately found to be untimely.  Id. at 223-26.  In Pace v. DiGuglielmo, 544 U.S. 408 (2005),

20   the Court held that statutory tolling is not available for the period a petition is under

21   consideration (i.e., an application for post-conviction relief is not "properly filed"), if it is

22   ultimately dismissed as untimely.  Id. at 413-14.  In Evans v. Chavis, 546 U.S. 189, 126 S.Ct.

23   846 (2006), the Court held that in the absence of a clear indication by the California Supreme

24   Court that a petition is untimely, "the federal courts must itself examine the delay in each case

25   and determine what the state courts would have held in respect to timeliness."  Chavis, 546 U.S.

26   at ___, 126 S.Ct. at 852.

27   Respondent and Petitioner agree that the statute of limitations began to run on July 21,

28   2004, that statutory tolling began when Petitioner filed his first state habeas petition on July 13,

2005, which was the 358th day of the 365-day limitations period, and that 7 days were left on the limitations period when tolling began. (Ans. Mem. at 11; Trav. Mem. at 5.) The parties also agree that, assuming the limitations period was tolled during the entire round of state post-conviction review, it began to run again on August 3, 2006, at which time Petitioner had 7 days remaining. (Ans. Mem. at 11; Trav. Mem. at 6.) Under this scenario, the statute of limitations began running again on August 3, 2006, with 7 days remaining, and ran for 8 days until Petitioner filed his federal Petition on August 10, 2006. Because the last day Petitioner could have timely filed a federal habeas petition under such a calculation was on August 9, 2006, the Petition would be one day late.

Petitioner concedes these are the proper dates, but miscalculates the number of days from August 3, 2006 to August 10, 2006, contending that it is a period of seven days, not eight, because "seven plus three equals ten." (Trav. Mem. at 6-7.) That is a period of eight days, not seven (August 3rd is the first day of the seven remaining days, August 4th is the second day, August 5th is the third day, August 6th is the fourth day, August 7th is the fifth day, August 8th is the sixth day, August 9th is the seventh and final day the Petition could be timely filed, and August 10th is the eighth day). Thus, under the parties' calculation of the statute of limitations, and assuming Petitioner is entitled to statutory tolling during the entire period he was pursuing one complete round of state post-conviction relief, the Petition was filed one day late.

However, the parties are counting July 13, 2005, the day that Petitioner filed his first state habeas petition, and the 358th day of the running of the limitations period, as one of the days the statute of limitations ran. Under the ordinary meaning of the term, the limitations period was running that day, at least up until the time the habeas petition was filed in the state court sometime that day. If that day is not counted as one of the days the limitations period was running, however, then Petitioner had 8 days remaining on the limitations period when the state supreme court denied his habeas petition (assuming tolling for the entire round of state habeas proceedings), and the Petition was timely.

The exact language of section 2244(d)(2) states: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent

1    judgement or claim is pending shall not be counted toward any period of limitation under this

2    subsection." 28 U.S.C.A. § 2244(d)(2) (West 2006). The Ninth Circuit has held that under this

3    section, "the statute of limitations is tolled from the time the first state habeas petition is filed

4    . . ." Nino, 183 F.3d at 1006. Thus, under a plain reading of the statute, July 13, 2005, the day

5    Petitioner's "first state habeas petition [was] filed," is a day "during which a properly filed

6    application for state post-conviction . . . relief . . . is pending," and that day "shall not be

7    counted" against the limitations period. Id. Respondent cites no authority for the proposition

8    implicit in their argument that the day the first state habeas petition was filed should count

9    against the limitations period. Because under a plain reading of the statute that day is not

10   counted against the running of the limitations period, and assuming the statute of limitations was

11   tolled during the entire round of state post-conviction review, Petitioner had 8 days left on the

12   limitations period when it began to run again on August 3, 2006, rendering his federal Petition

13   timely.

14        Respondent contends, however, that Petitioner is not entitled to statutory tolling during

15   the entire round of state post-conviction relief. (Ans. Mem. at 8-10.) Relying on the Chavis and

16   Saffold opinions referenced above, Respondent contends that the six-month delay between the

17   denial of Petitioner's first habeas petition by the superior court and the filing of a new petition

18   in the appellate court, was "unreasonable," therefore rendering that "gap period" unavailable for

19   tolling. (Id.) Petitioner argues that those cases are distinguishable because they both involved

20   gaps of longer than three years. (Trav. Mem. at 5.) He also contends that the gap was necessary

21   and reasonable. (Id. at 6.) In support of that contention, counsel for Petitioner has submitted his

22   own declaration as an attachment to the Traverse. (Doc. No. 20.)

23        Both Saffold and Chavis require a determination whether a delay during the "gaps" in one

24   complete round of state post-conviction proceedings was "unreasonable" under California law.

25   Saffold, 536 U.S. at 223-26; Chavis, 126 S.Ct. at 852. Here, the state appellate court did not

26   treat the habeas petition as untimely, even though it was filed after a delay of six months and ten

27   days, but reached the merits of the claims. Nevertheless, the federal court "must itself examine

28   the delay in each case and determine what the state courts would have held in respect to

-8-                                      06cv1601

timeliness." <u>Chavis</u>, 126 S.Ct. at 852.  The Court in <u>Chavis</u> recognized that "given the uncertain scope of California's 'reasonable time' standard, it may not be easy for the [Court] to decided in each case whether the prisoner's state-court review petition was timely."  <u>Id.</u> at 853.  The Court provided some guidance on that issue however, stating that: "We have found no authority suggesting, nor found any convincing reason to believe, that California would consider an unjustified or unexplained 6-month filing delay 'reasonable.'"  <u>Id.</u> at 854.  Thus, Petitioner must at least overcome this presumption that an unexplained and unjustified six-month delay is "unreasonable" within the meaning of California law.

Petitioner explains that the delay was necessary due to the finding by the superior court that he had not provided evidence necessary to support his claim of discrimination.  (Trav. Mem. at 6.)  As discussed more thoroughly below in the merits section of this Report, Petitioner claims here, as he did in the superior court, that his trial counsel was ineffective in the manner in which he brought and argued a pre-trial motion to compel the prosecution to disclose information pertaining to criminal prosecutions involving similarly situated defendants, information which Petitioner argues was necessary to support his claim that he was being discriminated against in the plea negotiations and in sentencing due to his status as a religious leader.  The appellate court denied the ineffective assistance of counsel claim on the basis that Petitioner had failed to establish prejudice from his counsel's alleged deficient performance.  (Lodgment No. 10, <u>In re Skoor</u>, No. HC 18225, slip op. at 5.)  The court found that he had failed to establish that the discovery he sought existed, and that even if it did exist, had failed to establish it would have had any effect on his plea agreement or sentence.  (<u>Id.</u>)

Counsel for Petitioner here, who was also counsel for Petitioner throughout the state habeas proceedings, argues that the six-month delay between the superior court's decision and the filing of a new habeas petition in the appellate court was necessary and reasonable because counsel had to review the data base of all felony cases filed in 2002 in the Central Division of the Superior Court of San Diego County.  (Trav. Mem. at 6.)  Counsel states that a review of the approximately 7000 cases filed in that period resulted in seven cases involving defendants, other than Petitioner, who were in a position of trust and where charged with similar offenses against

1   multiple victims.  (Id.)  Counsel states that this was a "massive undertaking," and that it took five

2   months to review and refine the data to present a clear showing of prejudice to the appellate

3   court.  (Id.; see also Declaration of Counsel attached to Traverse.)  As discussed in the merits

4   section of this Report, evidence regarding other cases involving similarly situated defendants

5   was critical to the resolution of the claims in the state courts.

6          Unlike Chavis, the six-month delay here is neither "unjustified" nor "unexplained."

7   Chavis, 126 S.Ct. at 854.  Rather, Petitioner has demonstrated that the delay was necessary to

8   compile the evidence which the superior court found was lacking, and he has overcome the

9   presumption of unreasonable delay in Chavis.  The Court finds that Petitioner has shown that

10  his delay in presenting his petition to the appellate court was reasonable within the meaning of

11  California law.  Thus, he is entitled to statutory tolling for the entire period he was pursuing state

12  post-conviction relief, and, for the reasons discussed above, the Petition is timely.  Accordingly,

13  the Court recommends that Respondent's Motion to Dismiss be **DENIED**.

14  **C.     Petitioner is not entitled to habeas relief on the merits of his claims.**

15         Petitioner contends he received ineffective assistance of counsel in two respects.  First,

16  he contends that, prior to entering into the plea agreement, his counsel's performance was

17  deficient in connection to a pre-trial defense motion to compel the production of records he

18  contends would have shown discrimination by the prosecution against Petitioner on the basis of

19  his status as a religious leader.  (Memorandum of Points and Authorities in Support of Petition

20  ["Pet.Mem."] (Doc. No. 6) at 8.)  Second, he contends counsel's deficient performance in

21  connection to that discovery motion, and in the failure to independently secure the public

22  information sought in the discovery motion, prevented him from presenting that information as

23  mitigating evidence at the sentencing hearing.  (Id.)  Respondent contends that the appellate

24  court's denial of these claims, on the basis that Petitioner had failed to establish deficient

25  performance or prejudice, was neither contrary to, nor involved an unreasonable application of,

26  clearly established federal law, and was not based on an unreasonable determination of the facts

27  in light of the state court proceedings.  (Memorandum of Points and Authorities in Support of

28  Answer ["Ans. Mem."] at 15-21.)

The clearly established United States Supreme Court law governing ineffective assistance of counsel claims is set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  <u>See</u> <u>Baylor v. Estelle</u>, 94 F.3d 1321, 1323 (9th Cir. 1996) (stating that <u>Strickland</u> "has long been clearly established federal law determined by the Supreme Court of the United States").  For ineffective assistance of counsel to provide a basis for habeas relief, Petitioner must demonstrate two things.  First, he must show that counsel's performance was deficient.  <u>Strickland</u>, 466 U.S. at 687.  "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  <u>Id.</u>  Second, he must show counsel's deficient performance prejudiced the defense.  <u>Id.</u>  This requires showing that counsel's errors were so serious they deprived Petitioner "of a fair trial, a trial whose result is reliable."  <u>Id.</u>  To satisfy the prejudice prong, Petitioner need only demonstrate a reasonable probability that the result of the proceeding would have been different absent the error.  <u>Strickland</u>, 466 U.S. at 694 ("The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel can not be shown by a preponderance of the evidence to have determined the outcome.").

Clearly established federal law also provides that in order to prevail on a discriminatory prosecution claim, a defendant must show a prosecutorial policy which had a discriminatory effect and was motivated by a discriminatory purpose.  <u>United States v. Armstrong</u>, 517 U.S. 456, 464 (1996) (holding that one of the constraints upon prosecutorial discretion "imposed by the equal protection component of the Due Process Clause of the Fifth Amendment . . . is that the decision whether to prosecute may not be based on 'an unjustifiable standard such as race, religion, or other arbitrary classification.'"), quoting <u>Oyler v. Boles</u>, 368 U.S. 448, 456 (1962).  However, a defendant "must prove that the decisionmakers in *his* case acted with discriminatory purpose."  <u>McCleskey v. Kemp</u>, 481 U.S. 279, 292 (1987) (emphasis in original).

Because Petitioner's claims were adjudicated on their merits in the state court, habeas relief is not available to Petitioner unless he can demonstrate that the adjudication of his claims by the state court was contrary to or involved an unreasonable application of, clearly established federal law, or involved an unreasonable determination of the facts in light of the evidence

presented in the state court proceedings.  28 U.S.C. § 2254(d) (1)-(2).  A state court's decision may be "contrary to" clearly established Supreme Court precedent: (1) "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  A decision may involve an "unreasonable application" of clearly established federal law, "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "if the state court either unreasonably extends a legal principle from precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407.

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. . . . Rather, that application must be objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003) (internal quotation marks and citations omitted). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the United States Supreme] Court's decisions." Williams, 529 U.S. at 412.

Habeas relief is also available if the state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court."  28 U.S.C.A. § 2254(d)(2) (West 2006).  In order to satisfy this provision, Petitioner must demonstrate that the factual findings upon which the state court's adjudication of his claims rest, assuming they rest on a factual determination, are objectively unreasonable. Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

Petitioner presented the same claims he presents here to the state supreme court in a petition for review of the appellate court order denying those claims.  (Lodgment No. 11 at 10-22.)  That petition was denied by an order which stated in full: "Petition for review DENIED. George, C.J., was absent and did not participate." (Lodgment No. 12, In re Skoor, No. S144680, slip op. at 1.)  Petitioner also filed a habeas petition in the appellate court raising the same

claims.  (Lodgment No. 7 at 17-27.)  That petition was denied on the merits in a written opinion filed on June 14, 2006.  (Lodgment No. 8.)

In <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 804 (1991), the Court adopted a presumption which gives no effect to unexplained state court orders but "looks through" them to the last reasoned state court decision.  The Court will therefore look through the silent denial by the state supreme court to the appellate court opinion.  First, however, the Court will examine the record regarding the discovery motion which gave rise to Petitioner's claims for ineffective assistance.

Trial counsel filed a motion to compel discovery, which stated in relevant part:

> It is the defense position that the Defendant, MICHAEL SKOOR, is not being given an opportunity to plea bargain his case as other defendants who have faced charges similar to his.  Deputy District Attorney Jill Schall has stated to Counsel for the Defendant that her office will settle provided Mr. Sckoor agrees to a sentence in the "high double digits."  Counsel for the Defendant believes that such an offer is far out of the norm for cases such as these, and seeks discovery to show that the District Attorney's Office is treating Mr. Skoor differently, probably due to his long history as a religious icon in his community.

> On April 26 2002, an informal request for discovery was hand-delivered to Ms. Schall's office at 330 West Broadway, San Diego.  This letter is attached hereto and incorporated herein by reference as Exhibit C.  This letter requested the following:

>> The case information for all cases similar to the defendant's that your office has prosecuted in the past 5 years.  Specifically, my request is for the court case numbers, DA case numbers, charging documents, plea agreements, and sentencing information for PC288(a) cases that are similar in nature to Mr. Skoor's.

> Ms. Schall contends the information sought does not fall under Penal Code section 1054 et. seq.

> . . . Counsel for the Defendant believes that the District Attorney's Office is seeking an extraordinary sentence because the Defendant was a Pastor and religious figurehead at the time these crimes are alleged to have occurred.  Counsel for the Defendant also believes that an extraordinary sentence is being sought because of the present amount of media attention that is being given to church figures accused of child molest.  Counsel for the Defendant contends that, just because Mr. Skoor has spent a lifetime of helping people, he should not be punished more severely than others who have committed these same types of acts.

> Counsel for the Defendant has discovered several cases so far that appear to have been handled differently than Mr. Skoor's.  Attached hereto and incorporated herein by reference as Exhibit D are newspaper articles of child molest cases that resolved in sentences far less than what could have been achieved in those cases.

(Lodgment No. 13, Clerk's Tr. at 35-36.)

1   The District Attorney opposed the motion on the basis that neither state nor federal law

2   gave rise to an obligation to turn over the information requested.  (Id. at 59-60.)  Petitioner

3   replied that neither state nor federal law precluded such discovery.  (Id. at 62.)

4   A transcript of the discovery hearing is included in the record.  (Lodgment No. 7, Ex. K.)

5   After hearing arguments and making preliminary remarks regarding the extent of discovery

6   requirements under California law, including referencing cases which provide for discovery

7   where there are allegations of vindictive or discriminatory prosecution, the trial judge stated:

8

9   So for discovery, which is what the Murgia [v. Municipal Court, 15 Cal.3d 286] case refers to, that is discovery to determine whether this is discriminatory prosecution, there is a fairly significant showing required on the part of the defense.

10

11   And there are a couple of cases that discuss the nature of discriminatory enforcement in discovery.  And one important case is a United States Supreme Court decision of United States v. Armstrong, 517 U.S. 456.  In that case, the defendants move for discovery on their claim that federal crack cocaine laws were being selectively enforced against Blacks.  In support of the motion, they presented an affidavit to the effect that in all 24 crack cocaine cases closed by the federal public defender's office in 1991, the defendant was Black.

12

13

14

15   The district attorney granted the motion – The district court granted the motion and the court of appeals affirmed the holding that the defendant need not show that the government has failed to prosecute others similarly situated.  That was the district court.

16

17

18   The United States Supreme Court reversed that holding and held that further selective-prosecution claims must demonstrate that the prosecutorial policies have a discriminatory effect and was motivated by discriminatory purpose.

19

20   In the case involving race, the claimant must show that similarly situated individuals of a different race were not prosecuted.  Obviously, race was the issue.  When discovery is sought, the court went on to say, in future selective-prosecution claims, the defendant has the burden of producing evidence of the essential elements of the defense; that is, that the discriminatory effect and discriminatory opinion are present.  And where the claim is one of race because discrimination evidence must be present that similarly situated defendants of other races could have been prosecuted, but were not.

21

22

23

24   And then the court went on to say the respondent did not make the required showing.  The court of appeals started with the presumption that persons of all races commit all kinds of crimes.  But the court held that that presumption is contradicted by statistics that show over 90 percent of those trafficking crack cocaine, 94 were Black.  Well, over 90 percent of those convicted of offenses involving LSD, pornography, or prostitution were White.

25

26

27

28   So I think you get the idea without me going on forever that I have done my best to try and classify this issue in a way that is fair to both sides.  And,

-14-

obviously, there is authority and statutory and case law authority for discovery regarding issues unrelated to guilt or innocence. I mean that is clear. And it's made specific intent that the – as I said because it refers to the Constitution of the United States.

The question is the burden that is required. Well, as I say, in this case, we have no racial issue. The claim is that people similarly situated have been offered better deals. That by itself finds no support as discriminatory enforcement in any case.

\* \* \*

There are cases in which the court upheld harsher treatment of police officers who committed the same crimes as non-police officers, civilians. There was one case – I don't know if I have it in front of me here – that I read in which non-law enforcement officers committing the same offense were provided with misdemeanor offers and the law enforcement officers on the same offense were offered felonies. And the court held that because of their position in the community, law enforcement should be held to a higher standard. They're in a position of trust. When they commit crimes, they're betraying a far greater trust than normal civilian member of the community, because they're under a greater obligation because of their occupation.

And so those are all within the discretionary reconsiderations the court has allowed on the part of the prosecution.

So at this point I can't really say there has been a sufficient showing of any constitutional violation that would justify providing the discovery requested at this time.

However, I have to stress once again that some of these courts have talked about – well, obviously, this ruling today is without prejudice to the defense to raise the issue in the future if additional facts become known that the defense feels would support an inquiry into other cases. Something beyond just the fact of the case being applied differently in the plea bargain than the facts relating to this defendant by itself. I don't think that is enough, even assuming everyone else was treated differently.

I suppose if one were to find that all pastors in similar situations were treated differently and there was some indication of prosecutorial attitude toward a certain religion or certain occupation, that would be different. But none of that is in the record before me at this time.

So I took a lot longer than I normally do in discovery motions, because I wanted to cite those cases for the benefit of counsel to follow up on, and I'm going to deny the motion without prejudice at this time, to renew it as such time as the defense feels there is a sufficient showing for the discovery.

(Id. at K-16-19.)

Petitioner contends that a review of the records of the Central Division of the San Diego County Superior Court for the year 2002 concerning violations of California Penal Code section 288(a) involving charges of abuse of multiple victims by a defendant in a position of trust, reveals seven cases which, when compared to his case, demonstrate that the pre-trial offer made

1   to Petitioner was disproportionately more severe than those offered to the defendants in those

2   cases.  (Pet. Mem. at 10.)  Petitioner contends here, as he did in the appellate court, that his trial

3   counsel's performance in bringing the pre-trial motion to compel discovery, and in failing to

4   renew the motion at the invitation of the trial judge, was deficient because counsel: (1) failed to

5   cite Armstrong in his motion papers; (2) failed to "plead *how* the petitioner was the object of

6   discrimination by failing to identify the basis for discrimination or the class of similarly situated

7   but more favorably treated persons as required under *Armstrong* and subsequent California

8   decisions."; (3) failed to independently discover the seven cases cited here and in the state

9   habeas proceedings, all of which were filed in the same court as Petitioner's case about the same

10  time regarding similarly situated defendants charged with similar crimes who were treated more

11  favorably; (4) failed to adequately argue that the two cases which defense counsel did bring to

12  the trial court's attention in the discovery motion papers involved non-religious figures, and

13  therefore demonstrated that Petitioner, as a religious figure, was being treated more harshly than

14  similarly situated non-religious figures; and (5) prevented Petitioner, as a result of these

15  aforementioned failures, from presenting mitigating evidence at sentencing which would have

16  supported a claim that the prosecution's request for a sentence at the upper end of the stipulated

17  range was motivated by Petitioner's status as a religious leader.  (Pet. Mem. at 10-17.)

18          The appellate court denied these claims, stating:

19              Skoor was a Lutheran minister and his victims were the two sons of a
20          parishioner.  Skoor claims he was the subject of prosecutorial discrimination
            because of his religious position.  He contends the prosecution offered better plea
21          bargains to other defendants "in a position of trust" who were charged with
            committing similar crimes against multiple victims.  Skoor claims trial counsel
22          was ineffective because he did not "(1) identify the basis for a claim for
            prosecutorial discrimination in a pre-trial motion to compel further discovery on
23          the prosecution's charging criteria, and (2) present evidence of public record that
            showed the prosecution sought a disproportionately harsher sentence because of
24          (Skoor's) religious status as a Lutheran minister."  Skoor wants his sentence
            vacated and the matter remanded to the trial court for reconsideration of the
25          sentence "in light of the markedly lower sentences imposed for similar offenses
            committed by similarly situated defendants who had no religious status."

26              The evidence Skoor provides does not support his claim of prosecutorial
27          discrimination.  In the seven cases he references, the defendants were charged
            with 6, 6, 21, 25, 18, and 7 counts, respectively.  Skoor was charged with 42
            counts.  Defendant Salvador Valdez did not plea bargain and was convicted by a
28          jury.  There is no evidence on the other defendants' employment or the problems
            of proof in each case.  Skoor has not shown that even had trial counsel obtained

the information on the other seven defendants, the People would have offered, and the court would have approved, a lesser prison sentence.

On the change of plea form Skoor acknowledged the maximum punishment he could receive as a result of his plea was 50 years in prison. Under the plea agreement Skoor was promised a sentence between 20 and 30 years and 18 counts would be dismissed. Skoor received the benefit of his bargain. Because the prison term was specifically negotiated by the parties, a reduction in the term would deprive the prosecution of one of the benefits for which it had bargained. (*People v. Enlow* (1998) 64 Cal.App.4th 850, 854.) Skoor's remedy was to move to withdraw his guilty plea. (*Ibid.*) [¶] The petition is denied.

(Lodgment No. 8, In re Skoor, No. D048229, slip op. at 1-2.)

Petitioner argues that the finding by the appellate court, that the cases cited in support of his contention failed to show persons similarly situated, was "clearly erroneous." (Pet. Mem. at 8.) He contends the finding that he did not make a sufficient showing of discriminatory prosecution was an unreasonable application of clearly established federal law as set forth in United States v. Armstrong, 517 U.S. 456, 468 (1996). (Pet. Mem. at 8.) Petitioner contends it was clearly erroneous for the appellate court to find that counsel could not have presented mitigating evidence at sentencing on the basis that it would have deprived the prosecution of the benefit of their bargain. (Id.) He argues that the appellate court misconstrued this aspect of his claim, and that he is not seeking to undue the terms of the plea bargain, but is arguing that his counsel failed to obtain mitigating evidence to present at the sentencing hearing which would have "showed that the petitioner was treated more severely because he committed the offenses in the context of his role as a Lutheran minister." (Id. at 9.) He contends the appellate court's failure to properly construe this aspect of his claim was an unreasonable application of the law to the facts within the meaning of 28 U.S.C. § 2254(d)(2). (Id.)

Petitioner first contends that his counsel was deficient for failing to cite Armstrong in the brief filed in support of the discovery motion, or in the reply to the District Attorney's opposition to the motion. (Pet. Mem. at 9.) However, as the excerpt of the motion hearing quoted above reveals, the trial judge conducted independent research regarding the basis for the discovery motion, and not only considered but heavily relied on the Armstrong case. Clearly there was no prejudice caused by defense counsel's failure to cite to Armstrong in the motion papers because it was not overlooked by the trial judge.

1   Petitioner next contends that counsel was deficient in failing to "plead *how* the petitioner

2   was the object of discrimination by failing to identify the basis for discrimination or the class

3   of similarly situated but more favorably treated persons as required under *Armstrong* and

4   subsequent California decisions." (Pet. Mem. at 9) (italics in original).  Petitioner defines this

5   class as persons charged with violations of California Penal Code section 288(a) against multiple

6   victims with whom the defendant occupied a position of trust.  (Id. at 9-10.)  Defense counsel

7   requested the information in very broad terms:

8       The case information for all cases similar to the defendant's that your office has
        prosecuted in the past 5 years.  Specifically, my request is for the court case
9       numbers, DA case numbers, charging documents, plea agreements, and sentencing
        information for PC288(a) cases that are similar in nature to Mr. Skoor's.

10

11   (Lodgment No 13, Clerk's Tr. at 35.)  That request was broad enough to include the class now

12   identified by Petitioner.  Nevertheless, Petitioner contends his trial counsel failed to adequately

13   argue the motion.  As quoted above, the trial judge was very thorough in his examination of the

14   discovery issue, and took "a lot longer than I normally do in discovery motions." (Lodgment

15   No. 7, Ex. K at K-18.)  The judge determined that if Petitioner could come forward with

16   evidence that the prosecution was treating persons in positions of trust in one occupation

17   differently than persons of trust in other occupations, or was treating members of one religious

18   denomination differently that members of other denominations, then discovery might be

19   appropriate.  (Id.)  The judge denied the motion without prejudice to defense counsel to renew

20   the motion in order to present such evidence, and actually encouraged counsel to do so if such

21   evidence existed.  (Id.)  As discussed below, the evidence which Petitioner now contends should

22   have been independently discovered by defense counsel and presented in a renewed discovery

23   motion does not support his claim of discrimination under any theory.  Petitioner has therefore

24   failed to show he was prejudiced by defense counsel's failure to plead the legal theory upon

25   which the trial court eventually relied to deny the discovery motion.  Petitioner's contention that

26   defense counsel was deficient for not finding such evidence, either before or after the judge's

27   invitation to do so, and his contention that the trial court did not correctly understand his legal

28   theory, are discussed below.

1    Petitioner next contends that defense counsel failed to adequately argue that the two cases
2    which involved similarly situated defendants which defense counsel did bring to the trial court's
3    attention in the discovery motion papers, involved non-religious figures, and therefore
4    demonstrated that he, as a religious figure, was being treated more harshly than similarly situated
5    non-religious figures. (Pet. Mem. at 10.) However, the entire basis of the written discovery
6    motion was the allegation that Petitioner was being treated more harshly because he was a
7    religious figure. (Lodgment No. 13, Clerk's Tr. at 35-36.) The two cases referenced in the
8    discovery motion included an El Cajon high-school coach who pleaded guilty to two counts of
9    molesting teenage boys in exchange for dismissal of two other charges, and an El Cajon police
10   officer who pled guilty to the molestation of his former fiancee's daughter. (Id. at 48-49.)
11   Defense counsel argued at the hearing that Petitioner was being treated differently than the
12   similarly-situated defendant in a third case, arguing that it was Petitioner's status as a religious
13   figure and the then-current media climate regarding molestation of children by religious figures
14   which was driving the prosecution to treat him differently. (Lodgment No. 7, Ex. K at K-6-7.)
15   The prosecutor distinguished the first two cases on the basis they did not involve the downtown
16   division of the San Diego County District Attorney's Office, and the third case by arguing that
17   as a result of a delay in bringing the case to trial, the victims were no longer children, and that
18   other delay-related proof problems existed. (Id. at K-9-11.)

19   As set forth above, the trial judge was receptive to consideration of cases which showed
20   a bias towards religious figures or between occupations of any kind. (Id. at K-18.) Defense
21   counsel was not deficient for failing to point out the obvious, that the occupations of the
22   defendants in the cases identified in the discovery motion and at oral argument were non-religion
23   related and the cases therefore showed a religious bias. Additionally, for the reasons discussed
24   below, Petitioner has not now, and did not then, come forward with cases which support his
25   claim of discrimination. Petitioner has therefore failed to demonstrate prejudice from defense
26   counsel's failure to argue that the cases referred to during the discovery motion supported his
27   discrimination claim, or from a failure to argue that Petitioner's status as a religious leader was
28   the source of the discrimination.

Petitioner next contends the appellate court was wrong to determine that the seven cases cited by him here and in the state habeas proceedings did not allege specific facts that would justify granting the discovery motion, and that the state courts were wrong to hold that these cases do not support a claim of discrimination under <u>Armstrong</u>.  (Pet. Mem. at 10.)  He contends the cases show that Petitioner's pre-trial plea offer was disproportionately more severe than those offered to other defendants charged with similar violations where multiple victims were involved and the defendant was in a position of trust.  (<u>Id.</u>)  Only four of the cases cited by Petitioner involve a defendant who was clearly in a position of trust, including a defendant who received a three-year sentence for molesting two nieces who had stayed overnight with him; a defendant who molested two stepchildren and received an eight-year sentence; a live-in boyfriend who molested two victims and received a twelve-year sentence; and a stepfather who molested two victims and received a ten-year sentence.  (Pet. Mem. at 11-12.)  With respect to the remaining four cases, Petitioner states that the records are not clear whether the defendants were in a position of trust in relation to the victims.  (<u>Id.</u> at 12.)

The cases just outlined do not involve defendants charged with thirty felony counts of child molestation, five felony counts of sending harmful matter with the intent to seduce a minor, five felony counts of residential burglary arising from entry into the victim's home with the intent to molest them, and two misdemeanor counts of indecent exposure, as was Petitioner. Rather, the cases involve defendants who either lived with the child victims or were related to them, which is very much unlike the relationship between Petitioner and his victims.  Petitioner states that his criteria for defining the class of persons is people in a position of trust who are charged with multiple violations of child molestation involving multiple victims, and he alleges a disparity of treatment between those who are religious leaders and those who are not. However, the United States Supreme Court has never recognized such a class for the purposes of discrimination in plea bargaining.  Rather, as the state court noted, there is no requirement whatsoever to plea bargain at all, and <u>Armstrong</u> merely recognized "that the decision whether to *prosecute* may not be based on an unjustifiable standard such as race, religion, or other arbitrary classification."  <u>Armstrong</u>, 517 U.S. at 465 (emphasis added).  Because the United

States Supreme Court has not recognized the class identified by Petitioner as protected in the plea bargaining process, the state appellate court's adjudication of the claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law. Williams, 529 U.S. at 412; Andrade, 538 U.S. at 75-76; see e.g. Weatherford v. Bursey, 429 U.S. 545, 561 (1977) (holding that "there is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial.")

Nevertheless, the trial judge extended Armstrong not only to the plea bargaining stage, but to encompass "occupation" among the "arbitrary classifications" which limit a prosecutor's discretion. The trial judge stated that if Petitioner could come forward with evidence of a prosecutorial discrimination "toward a certain religion or a certain occupation," the court would consider the evidence. (Lodgment No. 7, Ex. K at K-18.) Even assuming the class identified by Petitioner is protected from discrimination in the plea bargaining process under clearly established federal law, the state court was correct that Petitioner has presented no evidence of disparate treatment between religious leaders and non-religious leaders holding positions of trust over multiple victims.

Petitioner contends that because the defendants in the cases he brought to the appellate court's attention received lesser sentences or better plea bargains than he did, and because every other factor in their cases are similar, his harsher treatment must be due to his status as a religious leader. (Pet. Mem. at 14-15.) The state court was correct to reject that contention. First, it does not logically follow that the only reason for such a disparity was religion (the other defendants were also not astronauts or congressmen). However, even assuming that a showing of disparity between occupations would be enough to satisfy the threshold for discovery, the appellate court was correct for the more obvious reason that the factors in the cases cited by Petitioner are not similar to Petitioner's case in any meaningful way. As the appellate court correctly noted, none of the cases cited by Petitioner involved the number of felony counts with which Petitioner was charged. Moreover, the cases cited by Petitioner where the defendant was in a position of trust all involved family members (parents or putative parents and an uncle). The cases cited in the discovery motion are also distinguishable. The case of the high school coach

1   involved only four counts, the police officer's case involved an unstated number of counts of

2   molesting his former fiancee's daughter, and neither were handled by the same division of the

3   San Diego District Attorney's office as Petitioner's case.  (Lodgment No. 13, Clerk's Tr. at 48-

4   49.)  The third case involved proof issues arising from a delayed prosecution, and the victims

5   were adults at the time of the plea bargain.  (Lodgment No. 7, Ex. K at K-6-11.)  Petitioner's

6   attempt to compare his position of trust as a clergy member who was charged with thirty counts

7   of molestation (and five counts of burglary arising from entry into the victim's home to commit

8   some of the offenses), to that of a parent or guardian charged with a several counts of molesting

9   their children, step-children or nieces, is unavailing.  Even if those cases which are unclear as

10  to whether the defendant was in a position of trust could be shown to have involved coaches or

11  teachers, for example, and might therefore be relevant to Petitioner's argument at least as to

12  occupation, the state court correctly found that Petitioner has not shown that any of those cases

13  involved a comparable number of charges involved in his case.

14      The state court's determination that Petitioner had failed to demonstrate a prima facie

15  case of discriminatory treatment, and had therefore failed to establish that defense counsel

16  rendered ineffective assistance in connection to the discovery motion, was neither contrary to,

17  nor involved an unreasonable application of clearly established federal law.  Strickland, 466 U.S.

18  at 687; Armstrong, 517 U.S. at 465; Williams, 529 U.S. at 412; Andrade, 538 U.S. at 75-76.

19  Neither did it involve an unreasonable determination of the facts in light of the state court

20  proceedings.  Miller-El, 537 U.S. at 340.  Morever, much of the information which Petitioner

21  sought through the discovery motion was public information, which his habeas counsel

22  eventually secured.  Thus, even assuming Petitioner could demonstrate deficient performance

23  by counsel in failing to convince the trial judge to compel the District Attorney's Office to

24  provide the information through discovery, because the information was available to the public

25  and has now been obtained and shown to lack the probative value Petitioner alleges it possesses,

26  and there is no showing that additional details which might be contained the prosecution's files

27  might have changed the analysis, there is no showing of prejudice within the meaning of

28  Strickland.

Petitioner next contends that his counsel's failure to properly plead the discovery motion, or to renew the motion upon invitation of the trial judge to do so after explaining what type of evidence would be required, prevented Petitioner from presenting mitigating evidence at the sentencing hearing which would have supported a claim that the prosecution's request for a sentence at the upper end of the stipulated range was motivated by Petitioner's status as a religious leader.  (Pet. Mem. at 17.)  He argues that his sentencing hearing took place in the midst of a nationwide firestorm over sexual abuse by Catholic priests, and evidence showing he had been singled out for harsher punishment would have had a mitigating effect on the sentencing judge's decision to select a sentence within the stipulate range of twenty to thirty years.  (Id.)  Petitioner argues the appellate court failed to properly construe this aspect of his claim, incorrectly finding that he was seeking to undue the terms of the plea bargain by depriving the prosecution of a benefit of their bargain (the ability to argue for a sentence within the stipulated sentencing range), which amounted to an unreasonable application of the law to the facts within the meaning of 28 U.S.C. § 2254(d)(2).  (Id. at 9.)

The trial judge was well aware of the media attention regarding Petitioner's sentencing, beginning the sentencing hearing by dealing with a media request to photograph and film the sentencing proceedings.  (Lodgment No. 15, Reporter's Tr. at 16-20.)  Defense counsel argued at the sentencing hearing that, compared to other similar cases, even a sentence at the low end of the stipulated range would be "monstrous," and that it was the fact that Petitioner was a pastor of a church which made it impossible for counsel to procure a plea-bargained sentence more reflective of "how justice is handled in this country."  (Id. at 184-90.)  The trial judge acknowledged counsel's argument, and stated that: "I've had substantial experience doing all of the plea bargaining departments.  So I think I have a pretty good idea of what happens in our legal community."  (Id. at 185.)  The arguments of the prosecutor during the sentencing hearing summarized the evidence against Petitioner, and presented a cogent basis for sentencing him in the upper end of the stipulated range independent of his status as a religious leader, (id. at 139-67), as did the factual basis for the plea agreement.  (Lodgment No. 13, Clerk's Tr. at 84; Lodgment No. 14, Preliminary Hearing Tr. at 8-105, 118-28.)

For the reasons discussed above with respect to the first aspect of Petitioner's ineffective assistance claim, the appellate court correctly found that Petitioner had failed to identify any evidence that he was singled out for harsher treatment due to his status as a religious leader.  For the same reasons, the evidence Petitioner presents in support of his discrimination claim would not have supported the argument made at sentencing that he was the object of discrimination, and was therefore not mitigating with respect to his sentence.  Defense counsel argued during sentencing that Petitioner was treated harshly due to his religious status, and the sentencing judge, who was the same judge who heard the discovery motion and had previously invited defense counsel to come forward with any evidence of disparate treatment, acknowledged counsel's argument, and stated that he was experienced with plea bargaining in the downtown division.  The judge in fact praised defense counsel for "doing everything humanly possible to reduce [Petitioner's] exposure," by negotiating a plea which "has spared [Petitioner] from a life sentence, a triple-digit sentence in this case."  (Id. at 195.)

Accordingly, even assuming the state court's adjudication of this aspect of Petitioner's ineffective assistance of counsel claim was objectively unreasonable within the meaning of section 2254(d)(1) or (2) on the basis that the appellate court misinterpreted the claim as one seeking to undue the plea bargain and deprive the prosecution of the benefit of their bargain, Petitioner has not demonstrated that he received ineffective assistance of counsel.  He has demonstrated neither deficient performance nor prejudice as a result of counsel's performance at the sentencing hearing.  Strickland, 466 U.S. at 687.  As a result, he has not demonstrated that "he is in custody in violation of the Constitution or laws or treaties of the United States," and habeas relief is unavailable with respect to his aspect of his claim.  28 U.S.C. § 2254(a).

**IV.**

**CONCLUSION AND RECOMMENDATION**

For all of the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) **DENYING** Petitioner's Motion to Strike; (3) **DENYING** Respondent's Motion to Dismiss; and, (4) directing judgment be entered **DENYING** the Petition for Writ of Habeas Corpus.

**IT IS ORDERED** that no later than **July 13, 2007**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **August 3, 2007**.  The parties are advised that failure to file objections with the specified time may waive the right to raise those objections on appeal of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156 (9th Cir. 1991).

DATED:  June 13, 2007

_____
Hon. Leo S. Papas
U.S. Magistrate Judge